UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

TIG INDEMNITY COMPANY,   )
a California Corporation,   )
   )
   Plaintiff,   )
   )
   v.   )   Case No. 06-2008
   )
MICHAEL McFATRIDGE, THE COUNTY   )
OF EDGAR, and GORDON RANDY   )
STEIDL,   )
   )
   Defendants.   )

**OPINION**

On June 27, 2006, Plaintiff TIG Indemnity Company filed its First Amended Complaint for Declaratory Relief (#13). TIG seeks a declaration that it does not owe a duty to defend or indemnify Defendants Michael McFatridge or the County of Edgar with respect to a civil rights lawsuit filed against them by Defendant Gordon Randy Steidl. On November 15, 2006, TIG filed a Motion for Summary Judgment (#23). For the reasons that follow, the Motion for Summary Judgment is GRANTED.

FACTS

On May 27, 2005, Steidl filed a complaint against various defendants, including McFatridge and the County of Edgar, in the United States District Court for the Central District of Illinois, Urbana Division before the Honorable Harold Baker in case number 05-CV-2127. In that case,

Steidl brings several claims including wrongful arrest, malicious prosecution, false imprisonment, and intentional infliction of emotional distress. Steidl alleges, *inter alia*, that defendants in the lawsuit conspired to manufacture and coerce false testimony from witnesses for the prosecution and suppressed credible exculpatory evidence violating his civil rights and leading to his wrongful arrest, conviction, and imprisonment. Specifically, Steidl alleges in his complaint that "in June of 1987, [Steidl] was tried and convicted of murder and arson, and on June 16, 1987, sentenced to death on the basis of false evidence fabricated, coerced, suggested, and manipulated by Defendants Parrish, Eckerty, Ray and McFatridge."[1] Only one count of Steidl's complaint is directed at the County of Edgar. The only allegation against the County of Edgar is that McFatridge was its employee and is therefore responsible for any judgment against McFatridge. McFatridge had served as Edgar County State's Attorney until December 31, 1991. On or about that date, McFatridge stepped down from his position.

TIG issued a package insurance policy to the County of Edgar for the effective dates of July 1, 2001, through July 1, 2002 ("Policy"). The Policy contained multiple coverage forms, including a Law Enforcement Liability Coverage Form and a Commercial General Liability Coverage Form. The Law Enforcement Liability Coverage Form states, "This insurance applies only to bodily injury and property damage which occurs during the policy period." The Commercial General Liability Coverage Form states that the "insurance applies to 'bodily injury' or 'property damage' only if . . . the 'bodily injury' or 'property damage' occurs during the policy period." TIG filed the instant suit seeking a declaratory judgment that TIG has no duty to indemnify or defend McFatridge or the

---

[1] On June 17, 2003, Steidl's petition for writ of habeas corpus was granted by this court, vacating his conviction. Steidl was released from confinement on May 28, 2004.

County of Edgar in the underlying action under the Policy.

ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

Under Illinois law, "[a]n insurer's duty to defend 'is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy.'" Grinnell Select Ins. Co. v. Glodo, 2006 WL 897896 at *1 (S. D. Ill. 2006), quoting Dixon Distrib. Co. v. Hanover Ins. Co., 641 N.E.2d 395, 398 (Ill. 1994). "If the complaint alleges facts that fall potentially within the policy's coverage, the insurer has a duty to defend the insured in the lawsuit." Grinnell, 2006 WL 897896 at *1. Furthermore, if an insurer has no duty to defend, it necessarily has no duty to indemnify as the duty to defend is broader than the duty to indemnify. Grinnell, 2006 WL 897896 at *1.

It is undisputed in this matter that the policy period under the TIG Policy issued to the County of Edgar was July 1, 2001, to July 1, 2002. Nowhere in Stiedl's complaint does he make

an allegation that McFatridge or the County of Edgar performed any acts which form the basis of his complaint during this policy period. Steidl's conviction occurred in 1987, and McFatridge stepped down as State's Attorney of Edgar County in 1991. The only situation which existed which forms the basis of Steidl's complaint which occurred during the TIG policy period was his continued imprisonment. McFatridge and the County of Edgar assert that this incarceration during the policy period and any accompanying injuries which may have been suffered during that incarceration are sufficient to bring the allegations within the purview of TIG's policy.

On this issue, the court finds instructive the case of North River Ins. Co. v. Broward County Sheriff's Office, 428 F. Supp. 2d 1284 (S. D. Fl. 2006). In North River, two men who had been incarcerated for over twenty years were exonerated. The two men made a number of claims, including false imprisonment and § 1983 claims. The plaintiff insurance company had issued an insurance policy to the Broward County Sheriff's Office beginning in October 1999 and ending in October 2002. Like the Policy in the instant case, the policy at issue in North River indicated that the insurance could only be applied if any alleged bodily injury or property damage occurred during the policy period. Also like the instant case, the policy was not in effect at the time of the prisoners' arrest or at the time of any other alleged wrongdoing, but only during the prisoners' incarceration. The court aptly stated regarding whether there was a duty to defend:

> Years before the Policy was a glimmer in the Defendants' collective eye, [the prisoners] were allegedly wrongfully deprived of their liberty and falsely imprisoned – and any alleged malicious prosecution resulted in their imprisonment at that time. Not only would it strain logic to hold that a policy could be applied retroactively to activities undertaken twenty years earlier, but as a matter of public policy, if this

>Court were to deny [the insurance company's] motion, it would be imposing on [the insurance company] a risk based on the fortuitous occasion of the date of exoneration as opposed to the date when the damage first manifests itself, i.e., the date of incarceration. While [the insurance company] has a duty to defend lawsuits against officers for malicious prosecution or false imprisonment claims occurring during the Policy period, it is inconceivable that the calculation of the premium that Broward County paid [the insurance company] in order to purchase the Policy included an analysis of any earlier prosecutions in Broward County and the likelihood of malfeasance over the course of those prosecutions. The better rule . . . is to consider the time of the arrest and incarceration the "trigger" in both malicious prosecution and false imprisonment cases.

North River, 428 F. Supp. 2d at 1290 (emphasis in original).[2] See also Coregis Ins. Co. v. St. Paul Fire & Marine Ins. Co., 2006 WL 860710 (M. D. Pa. 2006).

McFatridge and Edgar County cite the case of Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561 (7th Cir. 1998) in arguing that this case involves a continual wrong which this court should find as occurring during the policy period despite the fact that the allegations forming the basis of Steidl's complaint did not occur during the policy period. The Roman Catholic case centered around allegations of child abuse committed by a former parish priest. Parents of the children filed suit asserting various claims after learning of the abuse. The Diocese tendered defense of the case to Maryland Casualty, which insured the Diocese during the time of

---

[2] Unlike North River, the date of exoneration in the instant case was also after the policy period.

the alleged abuse but not at the time the parents learned of the abuse. Maryland sought declaratory judgment arguing it had no duty to defend because the parents did not learn of the abuse until 1993, when Maryland Casualty no longer insured the Diocese, and it was not until this time that the parents suffered an injury. The district court granted declaratory judgment to Maryland Casualty, but the Seventh Circuit reversed. The Seventh Circuit found that when reading the complaint liberally it was "easy to imagine that the parents of the abused children were in fact injured long before 1993, and within the period of Maryland's coverage, but that the parents simply remained in the dark as to the source of their injuries until then." Roman Catholic, 139 F.3d at 567. Because the complaint alleged harm the children suffered as a result of the abuse, the Seventh Circuit concluded that "[s]urely some of these injuries occurred during the period of Maryland's coverage" and "these injuries could in turn have resulted in concrete identifiable harm to the parents within the same period." Roman Catholic, 139 F.3d at 567.

The critical difference between the Roman Catholic case and the instant case is that none of the actions which led to Steidl's injuries occurred during the policy period. In Roman Catholic, Maryland insured the Diocese at the time of the abuse. In the instant case, TIG did not insure Edgar County until fourteen years after Steidl's alleged wrongful conviction and the incidents which led to this conviction. In addition, TIG did not insure Edgar County until 10 years after McFatridge stepped down as State's Attorney for Edgar County, and it is McFatridge's actions which form the basis of Edgar County's potential liability. Accordingly, this court agrees with the court in North River that it would "strain logic" to hold that a policy applies retroactively to activities which occurred fourteen years prior to the policy period. Accordingly, this court determines that TIG has no duty to defend or indemnify Edgar County or McFatridge under the Policy.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion for Summary Judgment (#23) is GRANTED. This court finds Plaintiff has no duty to defend or indemnify Defendants Edgar County or McFatridge in the underlying litigation filed by Defendant Steidl in Case No. 05-CV-2127.

(2) This case is terminated.

ENTERED this 30th day of March, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE